UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTHONY VILLA, JR.,

                                        Plaintiff,                              No. 19-CV-428 (KMK)

                                v.                                              OPINION & ORDER

WESTCHESTER COUNTY, *et al.*,

                                        Defendants.

Appearances:

Anthony Villa, Jr.
Valhalla, NY
*Pro se Plaintiff*

Jane Hogan Felix, Esq.
Westchester County Attorney's Office
White Plains, NY
*Counsel for Defendant Westchester County*

Paul Andrew Sanders, Esq.
Barclay Damon LLP
Rochester, NY
*Counsels for Defendants Westchester County, Correct Care Solutions, LLC, and Amy Schell
LMHC*

KENNETH M. KARAS, United States District Judge:

        Anthony Villa, Jr. ("Plaintiff"), proceeding pro se, brings this Complaint, pursuant to 42

U.S.C. § 1983 and state law, against Defendants, alleging that they violated his rights and caused

him injury at Westchester County Jail ("WCJ") when they failed to protect Plaintiff from being

attacked by a fellow inmate, Abraham Greene ("Greene").  (*See generally* Am. Compl. (Dkt. No.

41).)[1]  Before the Court is Defendants' Motion To Dismiss the Complaint (the "Motion"), filed

pursuant to Federal Rule of Civil Procedure 12(b)(6).  (*See* Not. of Mot.; Am. Not. of Mot. (Dkt.

Nos. 42, 47).)   For the following reasons, the Motion is partially granted and partially denied.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiff's Amended Complaint and any exhibits

attached therein and are assumed true for the purpose of resolving the instant Motion.

Plaintiff was being housed within the WCJ in a "General Population" area.  (*See* Am.

Compl. 3.)[2]  Plaintiff and "multiple other inmates" noticed that a fellow inmate, Greene, was also

confined there.  (*Id.*)  Plaintiff alleges that Greene has "numerous psychiatric disorders," has

been confined in the WCJ "on numerous prior occasions," and is typically housed in other units

because of his "spontaneous, erratic behaviors."  (*Id.*)

Plaintiff and other inmates allegedly observed Greene engage in inappropriate behavior,

including "making sexual advances" towards Plaintiff and others.  (*Id.*)  Plaintiff alleges that on

November 26, 2018, Greene wrote him a letter "inquiring about the possibility of engaging in a

sexual relationship."  (*Id.*)  Plaintiff "immediately rejected" the proposition and informed the

"sector sergeant" about Greene's inquiry.  (*Id.*)  Plaintiff also "attempted" to file a grievance

requesting that Greene be transferred to a different housing unit.  (*Id.*)  According to Plaintiff, the

---

[1] "Defendants" refers to Westchester County (the "County"), Correct Care Solutions, LLC ("Correct Care"), Correctional Officer John Doe ("John Doe"), and Amy Schell ("Schell"). (*See* Dkt.; Am. Compl.)

[2] The Court cites to the ECF-stamped pages in the upper right-hand corner of the Amended Complaint.

"sector sergeant" refused to transfer Greene, who "slipped through [the] cracks" and ended up being housed in the general population.  (*Id.*)

Plaintiff alleges, upon information and belief, that Greene was refusing to take psychiatric medicine.  (*Id.* at 3–4.)  On November 27, 2018, Greene allegedly "broke off" a steel pipe within his cell, entered Plaintiff's cell, and struck him several times.  (*Id.* at 4.)  Plaintiff claims that the County's Department of Corrections was negligent in failing to secure all objects that could be used as a weapon within Greene's cell.  (*See id.*)  Plaintiff also claims that the County failed to adequately train and supervise correction officers in screening and housing "known psychiatric inmates with violent tendencies."  (*Id.*)

Plaintiff further alleges that he submitted a grievance regarding the assault to Sergeant Carozza ("Carozza") on November 27, 2018.  (*Id.*)  Although Carozza accepted the grievance, he also stated, "Oh you're trying to get staff in trouble."  (*Id.*)  Carozza never returned with an answer, and when Plaintiff followed up with him, Carozza merely asked, "What grievance?" (*Id.*)  Plaintiff claims that the "5[-]day limit" to file another grievance had then passed, and that this interfered with Plaintiff's "ability to exhaust."  (*Id.*)

Plaintiff claims that, as a result of the attack, he suffered a "3/4[] inch laceration," which required stitches, and that he experienced "mental anguish, permanent scarring, mental disorders, and intentional infliction of emotional distress."  (*Id.* at 3.)  Plaintiff seeks compensatory damages of $500,000 and punitive damages of $1,000,000.  (*Id.* at 6.)

B.  Procedural History

Plaintiff filed his Complaint on January 16, 2019.  (*See* Compl. (Dkt. No. 2).)  Plaintiff's request to proceed in forma pauperis ("IFP"), (*see* Dkt. No. 1), was granted on February 11, 2019, (*see* Dkt. No. 4).  On October 10, 2019, counsels for Defendants wrote that they were

3

unable to identify unnamed individual Defendants based on Plaintiff's descriptions in the

Complaint and that Plaintiff was late in filing any amended pleading.  (*See* Dkt. No. 28.)  The

Court ordered Plaintiff to file further identifying information by November 11, 2019.  (*See* Dkt.

No. 29.)  Plaintiff failed to do so.

On November 7, 2019, counsel for the County wrote stating that they were still unable to

identify the John and Jane Does named in the Complaint.  (*See* Dkt. No. 35.)  On the same day,

counsel for Correct Care wrote, stating that they believed the Jane Doe may be Schell.  (*See* Dkt.

No. 36.)  Plaintiff was instructed to file an amended complaint incorporating this information.

(*See* Dkt. No. 38.)  On November 27, 2019, Plaintiff filed the Amended Complaint.  (*See* Am.

Compl.)

On December 10, 2019, Defendants Correct Care and Schell filed a Notice of Motion, a

Declaration, and a Memorandum of Law.  (*See* Not. of Mot.; *see also* Decl. of Paul A. Sanders,

Esq. in Supp. of Mot. ("Sanders Decl."); Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.")

(Dkt. No. 43–44).)  On December 26, 2019, then-counsel for Correct Care and Schell entered an

appearance on behalf of the County as well, and filed an Amended Notice of Motion that

included the County as party to the pending Motion.  (*See* Dkt. No. 46; Am. Not. of Mot.)

Plaintiff did not file an opposition.  On March 12, 2020, upon Defendants' request, the Court

deemed the Motion fully submitted.  (*See* Dkt. No. 50.)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

4

elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*,

699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).  Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks and citation omitted).  When a plaintiff proceeds pro se, however, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted).

B. Analysis

    1. Municipal Liability

Defendants argue that the Amended Complaint fails to plausibly allege claims for municipal liability under *Monell* against the County and Correct Care. (*See* Defs.' Mem. 4–6.)[3]

"Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978). Thus, "to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell*, 436 U.S. at 690–91). In other words, a municipality may not be held liable under § 1983 "by application of the doctrine of respondeat superior." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (citation and italics omitted). Rather, "municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right." *Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008). A plaintiff may satisfy the fifth element by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers

---

[3] Section 1983 claims against Correct Care have previously been evaluated as *Monell* claims. *See Mercedes v. Westchester County*, No. 18-CV-4087, 2019 WL 1429566, at *5 (S.D.N.Y. Mar. 29, 2019) (considering and dismissing a *Monell* claim against Correct Care); *Tutora v. Correct Care Sols., LLC*, No. 17-CV-9169, 2019 WL 1383646, at *4 (S.D.N.Y. Mar. 27, 2019) (same).

> to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted). Moreover, a plaintiff also must establish an "affirmative" causal link between the municipality's policy, custom, or practice and the alleged constitutional injury. *City of Okla. City v. Tuttle*, 471 U.S. 808, 824 n.8 (1985).

The Amended Complaint fails to plausibly allege the existence of the fifth element of a *Monell* claim. Although Plaintiff conclusorily claims that the County fails to "adequately train and supervise correction[ officers]" in overseeing and separating "psychiatric inmates," he fails to allege the existence of any other similar incidents or complaints. (Am. Compl. 4.) "Normally, a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality." *Triano v. Town of Harrison, NY*, 895 F. Supp. 2d 526, 532 (S.D.N.Y. 2012) (citation, alteration, and quotation marks omitted); *see also Iacovangelo v. Corr. Med. Care, Inc.*, 624 F. App'x 10, 14 (2d Cir. 2015) (affirming dismissal of *Monell* claim where "the amended complaint provides only one additional example of a similar incident"); *Perez v. Annucci*, No. 18-CV-147, 2019 WL 1227801, at *5 (S.D.N.Y. Mar. 15, 2019) ("The amended complaint does not allege any other specific instances of excessive force at Green Haven or any other DOCCS facility, nor does plaintiff specifically allege any other inmate in DOCCS custody suffered excessive force."); *Gordon v. City of New York*, No. 10-CV-5148, 2012 WL 1068023, at *4 (E.D.N.Y. Mar. 29, 2012) (dismissing *Monell* claim where the plaintiff's "allegation [was] unsupported by anything other than the facts of what occurred in his particular case" (citations omitted)).

8

Therefore, Plaintiff fails to allege the fifth element required to state a *Monell* claim. Accordingly, Plaintiff's claims against Correct Care and the County are dismissed.  *See McKenzie v. City of Mount Vernon*, No. 18-CV-603, 2018 WL 6831157, at *7 (S.D.N.Y. Dec. 28, 2018) (dismissing *Monell* claim where the plaintiff did "not allege any facts suggesting a policy or custom that led to [the] alleged" constitutional deprivation); *5 Borough Pawn, LLC v. City of New York*, 640 F. Supp. 2d 268, 300 (S.D.N.Y. 2009) (dismissing *Monell* claim where the "plaintiffs fail[ed] to allege any facts showing that there is a [municipal] policy—unspoken or otherwise—that violates the Federal Constitution").

### 2.  Personal Involvement

Defendants also argue that Plaintiff fails to plausibly allege the personal involvement of Defendant Schell in any purported constitutional violation.  (*See* Defs.' Mem. 6.)

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show. . . the defendant's personal involvement in the alleged constitutional deprivation."  *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (collecting cases).  To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (citations and emphases omitted).  In other words, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at

9

676.  Therefore, Plaintiff must plausibly allege that Defendants' actions fall into one of the five categories identified above.  *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[ ] with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

Here, Defendants are correct that Plaintiff fails to plausibly allege the personal involvement of Defendant Schell at all.  Plaintiff makes no mention of what role, if any, Schell or any mental health counselor played in housing decisions regarding inmate Greene.  Indeed, Schell's name does not appear anywhere besides the caption of the Amended Complaint.  (*See generally* Am. Compl.)[4]  This alone is grounds for dismissal.  *See Washington v. Melis*, No. 16-CV-6469, 2018 WL 2324079, at *3 (S.D.N.Y. May 22, 2018) (dismissing a claim in part because the defendant was "not once mentioned by name or position in the body of the [a]mended [c]omplaint" (collecting cases)); *Manley v. Ramos*, No. 13-CV-2662, 2014 WL 1496094, at *2 (S.D.N.Y. Apr. 16, 2014) (dismissing claims where the plaintiff "name[d] [police officers] as defendants in the caption, but . . . never mention[ed] them again in the body of the complaint"); *Ortiz v. Bloomberg*, No. 10-CV-9434, 2011 WL 4822829, at *3 (S.D.N.Y. Oct. 7, 2011) (dismissing claims where "the only named reference to [certain correctional officers] [was] in the caption of the [c]omplaint, and the only additional references to these defendants [were] merely conclusory statements about their personal involvement and liability" (record citation omitted)).  Accordingly, any claims against Schell are dismissed.

---

[4] In the original Complaint, Schell also only appears in the caption, although she was "Correct Care . . . [m]ental [h]ealth staff Jane Doe" at the time.  (Compl. ECF 1.)

### 3.  Post-Incident Grievance

Although Plaintiff did not name Carozza as a Defendant in his Amended Complaint, (*see* Am. Compl. 1), Plaintiff did include allegations that Carozza feigned ignorance of the grievance that Plaintiff sought to file regarding Greene's attack, (*see id.* at 4).  Out of an abundance of caution, the Court addresses these allegations.  To the extent Plaintiff seeks to allege a claim against Carozza on these grounds, however, it would nevertheless fail as a matter of law.

"It is well established . . . that inmate grievances procedures are undertaken voluntarily by the states, that they are not constitutionally required, and accordingly that a failure to process, investigate[,] or respond to a prisoner's grievances does not in itself give rise to a constitutional claim." *Swift v. Tweddell*, 582 F. Supp. 2d 437, 445–46 (W.D.N.Y. 2008) (collecting cases); *see also Ford v. Aramark*, No. 18-CV-2696, 2020 WL 377882, at *11 (S.D.N.Y. Jan. 23, 2020) (explaining that "[p]rison grievance procedures do not confer any substantive right upon an inmate requiring the procedural protections envisioned by the Fourteenth Amendment") (citation and quotation marks omitted) (collecting cases)); *Cancel v. Goord*, No. 00-CV-2042, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) ("[T]he refusal to process an inmate's grievance or failure to see to it that grievances are properly processed does not create a claim under § 1983." (citation omitted)).  Therefore, any such claim against Carozza is dismissed.[5]

---

[5] Whether Plaintiff has a *cause of action* under § 1983 on these grounds is, of course, a different question than whether Plaintiff may raise Carozza's action or inaction as a rebuttal to any potential argument that Plaintiff failed to administratively exhaust his claims.  If Defendants argued, for example, that Plaintiff failed to exhaust his claims, it is conceivable that Plaintiff could use his interactions with Carozza to counterargue that "particular circumstances rendered a nominally available [grievance] procedure unavailable as a matter of fact."  *Wood v. Byrd*, No. 16-CV-8142, 2020 WL 550787, at *6 (S.D.N.Y. Feb. 4, 2020) (citation and quotation marks omitted); *see also Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015) ("If the defendants meet [the] initial burden [of demonstrating failure to administratively exhaust], administrative remedies may nonetheless be deemed unavailable if the plaintiff can demonstrate

    4.  Failure to Protect

Defendants offer arguments on a confusing mix of doctrines, contending that Plaintiff

fails to state a claim under the Due Process clause; that Plaintiff fails to state a claim under the

state-created danger theory; that Plaintiff fails to state a claim of deliberate indifference to

medical needs; and that Plaintiff failed to plausibly allege "proximate causation."  (*See* Defs.'

Mem. 8–13.)  Although the Court agrees that nothing within the Amended Complaint plausibly

alleges a Procedural Due Process violation, a state-created danger theory claim, or deliberate

indifference to medical needs, the Court does liberally read the Amended Complaint to allege a

failure-to-protect claim based on the Fourteenth Amendment's conditions-of-confinement

protections for pretrial detainees.  (*See generally* Am. Compl.)[6, 7]  Although Defendants failed to

squarely address this claim, the Court evaluates its viability.

"[A]n inmate's claim that prison officials failed, as a result of their deliberate

indifference, to protect [the inmate] from the violent actions of other inmates may state a viable

_____

that other factors—for example, threats from correction officers—rendered a nominally available procedure unavailable as a matter of fact." (citation omitted)).  Therefore, allegations such as the ones against Carozza are typically evaluated in the context of rebutting the affirmative defense of failure to administratively exhaust and do not themselves constitute an independent, cognizable claim under § 1983.

[6] The Court assumes that Plaintiff was a pre-trial detainee at the time of the incident because Plaintiff alleges that he was housed in the WCJ and not at any prison.  (*See* Am. Compl. 2.)

[7] It is true, as Defendants point out, (*see* Defs.' Mem. 10–11), that Plaintiff does not use the words "deliberate indifference" in his Amended Complaint, (*see generally* Am. Compl.).  However, the facts alleged still may be construed as an attempt to state a failure-to-protect claim, and the Court must "interpret[ the Amended Complaint] so as to raise the strongest arguments that it suggests."  *Rutherford v. Westchester County*, No. 18-CV-4872, 2020 WL 433841, at *5 (S.D.N.Y. Jan. 28, 2020) (citation, alterations, and quotation marks omitted).  It is not necessary for Plaintiff to have used accurate and precise legal terminology to nevertheless articulate a plausible constitutional claim.

§ 1983 cause of action." *Hendricks v. Coughlin*, 942 F.2d 109, 113 (2d Cir. 1991) (citations omitted); *Price v. Oropallo*, No. 13-CV-563, 2014 WL 4146276, at *8 (N.D.N.Y. Aug. 19, 2014) ("Prison officials are liable . . . for harm incurred by an inmate if they act with deliberate indifference to the inmate's safety." (citation omitted)). Deliberate indifference claims under the Fourteenth Amendment are analyzed somewhat differently than the same claims under the Eighth Amendment, which applies to inmates who have been convicted and sentenced. *See Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017) (explaining the different mens rea requirements for Eighth Amendment and Fourteenth Amendment deliberate indifference claims). To be sure, the overarching framework remains the same. Under both the Eighth and Fourteenth Amendments, to state a deliberate indifference claim an inmate must plausibly allege (1) "that he suffered a sufficiently serious constitutional deprivation," and (2) that the defendant "acted with deliberate indifference." *Feliciano v. Anderson*, No. 15-CV-4106, 2017 WL 1189747, at *8 (S.D.N.Y. Mar. 30, 2017) (collecting cases).

The first element "is evaluated the same way under both the Eighth Amendment and Fourteenth Amendment." *Ackridge v. Aramark Corr. Food Servs.*, No. 16-CV-6301, 2018 WL 1626175, at *19 n.19 (S.D.N.Y. Mar. 30, 2018) (citing *Darnell*, 849 F.3d at 30). This requirement is "objective": the inmate must show that "the alleged deprivation" is "sufficiently serious." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (citation and quotation marks omitted). In other words, the inmate must show that he was "incarcerated under conditions posing a substantial risk of serious harm." *Blandon v. Capra*, No. 17-CV-65,

2017 WL 5624276, at *7 (S.D.N.Y. Nov. 20, 2017) (quotation marks omitted) (quoting *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996)).

The second element "applies differently to claims under the Eighth Amendment and the Fourteenth Amendment." *Howard v. Brown*, No. 15-CV-9930, 2018 WL 3611986, at *4 (S.D.N.Y. July 26, 2018) (citing *Darnell*, 849 F.3d at 34–35). Although the Eighth Amendment imposes a subjective standard—that the prison official "know[ ] of and disregard[ ] an excessive risk to inmate health or safety," *Darnell*, 849 F.3d at 32 (citation and quotation marks omitted)— the Fourteenth Amendment, applicable here, imposes an objective standard. That is, the prison official need only "recklessly fail[] to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35. However, "[d]espite the slightly lower standard" applicable to pretrial detainees, "which is akin to objective recklessness, any § 1983 claim or a violation of due process requires proof of a mens rea greater than mere negligence." *Miller v. County of Nassau*, No. 16-CV-5843, 2018 WL 1597401, at *3 (E.D.N.Y. Mar. 31, 2018) (some citations, alterations, and quotation marks omitted) (ultimately quoting *Darnell*, 849 F.3d at 36).

Here, Plaintiff avers that Greene was acting erratically and inappropriately while confined with the general population, that Greene wrote Plaintiff a note "inquiring about the possibility of engaging in a sexual relationship," that Plaintiff refused and immediately informed an unnamed "sector sergeant" about Greene's "advances," and that Plaintiff also "attempted to file a grievance" requesting that Greene be sequestered in separate housing. (Am. Compl. 3.) No steps were taken to separate Greene, and the day after Greene wrote Plaintiff this note, Greene allegedly attacked Plaintiff with a broken steel pipe. (*See id*. at 3–4.) "[P]rison officials

14

have a constitutional duty to act reasonably to ensure a safe environment for a prisoner when they are aware that there is a significant risk of serious injury to that prisoner, and the failure to do so violated that prisoner's rights, whether or not an attack actually occurs, and if it does occur, whether or not the injuries suffered in an attack are serious." *Johnson v. Schiff*, No. 17-CV-8000, 2019 WL 4688542, at *16 (S.D.N.Y. Sept. 26, 2019) (citation, alteration, and quotation marks omitted).  Generally, "[c]ourts have found that, when an inmate informs correction[] officers about a specific fear of assault and is then assaulted, this is sufficient to proceed on a claim of failure to protect." *Francis v. City of New York*, No. 17-CV-1453, 2018 WL 4659478, at *4 (S.D.N.Y. Aug. 21, 2018) (citation and quotation marks omitted) (collecting cases).  However, "[t]hose cases which have found officers potentially liable for failing to prevent an attack involved clear and specific threats against an inmate." *Velez v. City of New York*, No. 17-CV-9871, 2019 WL 3495642, at *4 (S.D.N.Y. Aug. 1, 2019) (collecting cases), *appeal dismissed*, No. 19-2740 (2d Cir. Oct. 17, 2019).

The Court determines that, liberally construed, the Amended Complaint has plausibly alleged a failure-to-protect claim.  Similar to many other cases in which motions to dismiss have been denied, Plaintiff allegedly told a correction officer about the existence of one specific potential threat from an inmate and was then attacked by that very inmate.  (*See* Am. Compl. 3–4.)  Unlike situations where inmates merely informed correction officers that they vaguely "feared for [their] safety," *Haughton v. Clinton*, No. 15-CV-1160, 2015 WL 9244398, at *2 (S.D.N.Y. Dec. 17, 2015) (citations, alteration, and quotation marks omitted), or expressed "concerns of future assault by unknown individuals," *Anselmo v. Kirkpatrick*, No. 19-CV-350, 2019 WL 2137469, at *4 (N.D.N.Y. May 16, 2019) (citations and quotation marks omitted), here, Plaintiff alleges that he told John Doe about sexual advances and erratic behavior from

15

Greene and that he wanted Greene to be housed separately for safety reasons, (Am. Compl. 3).

Nevertheless, John Doe took no action to separate Plaintiff from Greene.  (*See id*.)   At the

pleading stage, this is sufficient to state a failure-to-protect claim against John Doe.  *See*

*Albritton v. Morris*, No. 13-CV-3708, 2016 WL 1267799, at *13 (S.D.N.Y. Mar. 30, 2016)

("[W]hen an inmate informs correction[] officers about a specific fear of assault and is then

assaulted, this is sufficient to proceed on a claim of failure to protect." (citation and quotation

marks omitted)); *see also Johnson*, 2019 WL 4688542, at *16 (denying motion to dismiss on

claims where the defendants were alleged to have "prior notice of racial tension in the unit" that

spilled over into violence (citation omitted)); *Sheffer v. Fleury*, No. 18-CV-1180, 2019 WL

4463672, at *8 (N.D.N.Y. Sept. 18, 2019) (finding the plaintiff's allegations sufficient where he

told the defendant that he "feared for his safety," even though he did not allege that he

specifically feared a *sexual* assault); *Beckles v. Bennett*, No. 05-CV-2000, 2008 WL 821827, at

*18 (S.D.N.Y. Mar. 26, 2008) (explaining that a failure-to-protect claim survived summary

judgment because the plaintiff had "presented evidence that he made [the defendant] aware of a

specific threat to his safety and that several hours later he was seriously assaulted").

       Plaintiff's failure-to-protect claim, although legally viable at this stage, involves the

added wrinkle of an unidentified John Doe Defendant.  Plaintiff has thus far not provided any

further identifying information to assist Defendants in identifying the unnamed correction officer

who was told about the potential threat from inmate Greene.[8]  (*See generally* Dkt.)  Although a

named defendant is typically necessary to plausibly allege a constitutional claim, "the rule is not

applied strictly against pro se plaintiffs, especially when incarcerated, at this stage in a litigation;

---

       [8] Carozza is alleged only to have mishandled Plaintiff's grievance regarding the attack
*after* the attack already occurred.  (*See* Am. Compl. 4.)

instead, it is proper for a [§] 1983 plaintiff to use a 'Doe' pleading until such time as [his] identity can be learned through discovery or through the aid of the trial court." *Warren v. Goord*, 476 F. Supp. 2d 407, 413 (S.D.N.Y. 2007) (citation and some quotation marks omitted); *see also Perez v. Ponte*, 236 F. Supp. 3d 590, 627 (E.D.N.Y. 2017) (same); *Cruz v. City of New York*, 232 F. Supp. 3d 438, 448 (S.D.N.Y. 2017) (waiting until summary judgment to dismiss claims against unnamed defendants because the record provided "no indication that [the plaintiff] ha[d] made any effort to discover the Doe defendants' true names" (collecting cases)). To the extent Plaintiff seeks to amend the instant pleading, Plaintiff should add anything that he remembers about John Doe (e.g., physical attributes, job title, date(s) and/or time(s) of his shifts), so that Defendants may properly identify him. If the Action proceeds without further amendment by Plaintiff, then the Parties should attempt to identify John Doe through the use of discovery.

### 5.  State Law Claims

To the extent Plaintiff attempts to allege any state law claims, they must be dismissed for failure to file a notice of claim. Under New York law, "as a condition precedent to bringing a claim against a municipality, a plaintiff must file a notice of claim within 90 days after her claim accrues." *Russell v. Westchester Cmty. Coll.*, No. 16-CV-1712, 2017 WL 4326545, at *5 (S.D.N.Y. Sept. 27, 2017) (citing N.Y. Gen. Mun. Law § 50-e(1)(a)); *see also* N.Y. Gen. Mun. Law § 50-k(6) ("No action . . . shall be prosecuted or maintained against the city . . . or an employee . . . unless notice of claim shall have been made and served upon the city . . . ."); *Olsen v. County of Nassau*, No. 05-CV-3623, 2008 WL 4838705, at *1 (E.D.N.Y. Nov. 4, 2008) ("As a 'condition precedent' to commencing a tort action against New York municipalities, or any of their officers, agents, or employees, New York General Municipal Law § 50-e requires plaintiffs to file a notice of claim within ninety days after the claim arises." (citation omitted)). Moreover,

17

"in a federal court, state notice-of-claim statutes apply to state-law claims." *Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) (citations and emphasis omitted).

"Federal courts do not have jurisdiction to hear complaints from plaintiffs who have failed to comply with the notice of claim requirement, or to grant permission to file a late notice." *Gibson v. Comm'r of Mental Health*, No. 04-CV-4350, 2006 WL 1234971, at *5 (S.D.N.Y. May 8, 2006) (footnote omitted). Further, "the burden is on [the p]laintiff to demonstrate compliance with the notice of claim requirements." *Peritz v. Nassau Cty. Bd. of Coop. Educ. Servs.*, No. 16-CV-5478, 2019 WL 2410816, at *4 (E.D.N.Y. June 7, 2019) (citations omitted); *see also Naples v. Stefanelli*, 972 F. Supp. 2d 373, 390 (E.D.N.Y. 2013) ("To survive a motion to dismiss, a plaintiff must affirmatively plead that a notice of claim was filed." (citing, inter alia, N.Y. Gen. Mun. Law § 50-i(1)(b))). "The notice of claim requirements are strictly construed, and a plaintiff's 'failure to comply with the mandatory New York statutory notice-of-claim requirements generally results in dismissal of his claims.'" *Smith v. City of New York*, No. 04-CV-3286, 2010 WL 3397683, at *15 (S.D.N.Y. Aug. 27, 2010) (citation omitted), *aff'd sub nom. Smith v. Tobon*, 529 F. App'x 36 (2d Cir. 2013).

Because Plaintiff failed to affirmatively plead that he filed a notice of claim with respect to any state law claims, those claims are dismissed. *See El v. City of New York*, No. 14-CV-9055, 2015 WL 1873099, at *8 (S.D.N.Y. Apr. 23, 2015) ("Absent a showing of such a notice of claim, the complaint may be dismissed for failure to state a cause of action." (citation and quotation marks omitted)), *appeal dismissed*, No. 15-1413 (2d Cir. Aug. 4, 2015); *Naples*, 972 F. Supp. 2d at 390 (dismissing state law claims against municipality where "the [a]mended [c]omplaint is void of any allegation that a notice of claim was filed prior to the commencement of [the] action" (footnotes omitted)).

18

### III.  Conclusion

For the foregoing reasons, the Court partially grants and partially denies Defendants' Motion To Dismiss.  In light of Plaintiff's pro se status, and because this is the first adjudication of Plaintiff's claims on the merits, the claims that are dismissed are dismissed without prejudice. If Plaintiff wishes to file a second amended complaint alleging additional facts and otherwise addressing the deficiencies identified above, including any further information that would assist in identifying John Doe, Plaintiff must do so within 30 days of the date of this Opinion & Order. Failure to properly and timely amend will likely result in dismissal of the already-dismissed claims with prejudice.  In case of no further amendment, the Action will proceed on the surviving failure-to-protect claim, and Plaintiff should attempt to identify and name John Doe with the aid of discovery.

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. Nos. 42, 47), and to mail a copy of this Opinion & Order to Plaintiff's address listed on the docket.

SO ORDERED.

Dated:    August 5, 2020
             White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

19